RICHARD S. McMAINS AND SUZANNE L. McMAINS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
McMains v. Commissioner
Docket No. 24023-84.
United States Tax Court
T.C. Memo 1986-266; 1986 Tax Ct. Memo LEXIS 342; 51 T.C.M. (CCH) 1297; T.C.M. (RIA) 86266; July 1, 1986. Richard S. McMains, pro se. James J. Everett, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined deficiencies in petitioners' Federal income tax liability and additions to tax as follows: Taxable
Additions to Tax
Year
Deficiency
Sec. 6653(a)(1) [1]
Sec. 6653(a)(2)
1979
$3,451
$172.55
1980
3,418
170.90
1981
2,941
147.05
50% of interest
due on $2,941
*344 The issues presented are: (1) whether petitioners are entitled to deduct alleged charitable contributions; (2) whether petitioners failed to report income; (3) whether the period of limitations expired for the taxable year 1980; (4) whether petitioners are liable for additions to tax under sections 6653(a)(1) and 6653(a)(2); and (5) whether the imposition of damages under section 6673 is proper. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the attached exhibits are incorporated by this reference. Richard S. and Suzanne L. McMains (petitioners) resided in Sierra Vista, Arizona, during the taxable years in issue and at the time they filed their petition in this case. Sometime prior to the taxable years in issue petitioners applied for and received a "charter" from the Universal Life Church, Inc., of Modesto, California (hereinafter referred to as ULC-Modesto). On November 28, 1978, petitioners executed a guit claim deed *345 to certain real property including their residence to "The Universal Life Church, Charter Number 24564, J-TAG FARM" (hereinafter referred to as ULC No. 24564). The property was encumbered by a mortgage upon which petitioners remained liable. ULC No. 24564 had no church building, but its mailing address was given as "Box 475 Moson Road, Sierra Vista, Arizona 85635," which represented no more than a mailbox on a rural postal route next to petitioners' mailbox labeled "Box 474 Moson Road." At all times subsequent to the execution of the quit claim deed, petitioners continued to use this property as their residence. During the taxable years in issue petitioners deposited cash or checks drawn on their personal account into a checking account established for ULC No. 24564 at the Arizona Bank. Petitioners also periodically deposited in the ULC No. 24564 account amounts received from third parties. These deposits into the ULC No. 24564 account from sources other than petitioners totaled $8,407.10 for the taxable year 1979, $5,255 for the taxable year 1980, and $1,695 for the taxable year 1981. Petitioners made no payments directly to ULC-Modesto. Petitioners were the only persons *346 authorized to write checks on the ULC No. 24564 account. Throughout the years in issue checks were drawn on this account to pay personal expenses of petitioners including mortgage payments on the property transferred to ULC No. 24564, telephone, and automobile expenses, as well as cash payments to petitioner Suzanne L. McMains. Pursuant to an examination of petitioners' Federal income tax returns, on December 16, 1982, the Commissioner issued a third-party summons to the Arizona Bank directing it to produce for examination books, papers, records and other data concerning the ULC No. 24564 account. Petitioners notified the bank that it should not comply with the summons. After the bank failed to comply with the summons, the Commissioner instituted a summons enforcement action in the U.S. District Court for the District of Arizona on January 9, 1984.Thirty days later, on February 8, 1984, the District Court judge issued an order requiring Arizona Bank to produce the documents specified in the Commissioner's summons. On May 9, 1984, the Commissioner issued a statutory notice of deficiency in which he determined deficiencies in petitioners' Federal income tax liability for the taxable *347 years 1979, 1980, and 1981. Among the determinations made was that petitioners' charitable contribution deduction must be reduced in the amounts of $9,167 for 1979, $11,441 for 1980, and $10,936 for 1981. The Commissioner also determined that petitioners had unreported income in the amounts of $8,407, $5,455, and $4,095 for the taxable years 1979, 1980, and 1981, respectively. The determination of unreported income was based upon deposits into the ULC No. 24564 account from sources other than petitioners and upon certain unidentified deposits in petitioners' personal bank account. Finally, the Commissioner imposed additions to tax under sections 6653(a)(1) and 6653(a)(2). Respondent's counsel sent petitioners a letter dated May 1, 1985, enclosing copies of several cases, which involved purported charitable contributions to the Universal Life Church and in which this Court awarded damages under section 6673. [2] At the beginning of the trial of this case, respondent moved to impose damages under section 6673. *348 OPINION Issue 1. Charitable Deductions
Section 170(c) allows a deduction for a contribution or gift to or for the use of-- * * * (2) A corporation, trust, or community chest, fund, or foundation-- * * * (B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes * * *; (C) no part of the net earnings of which inures to the benefit of any private shareholder or individual; * * * The burden of proving entitlement to a deduction is on petitioners. Deputy v. du Pont,308 U.S. 488 (1940); NewColonial Ice Co. v. Helvering,292 U.S. 435 (1934); Rule 142(a). Thus, petitioners must prove that all requirements of section 170 have been satisfied in order to obtain a deduction for the funds they transferred to the bank account of their Universal Life Church chapter. Based upon our review of the record, we conclude that petitioners have fallen woefully short of satisfying this burden. The main thrust of petitioners' arguments in support of the claimed deductions was that their deposits to the bank account of ULC No. 24564 actually represented contributions to ULC-Modesto, an organization *349 possessing a charitable exemption under section 501(c)(3) during the taxable years in issue and listed in respondent's publication No. 78. [3] Although respondent apparently concedes that payments were made into the account of ULC No. 24564, petitioners have introduced no admissible evidence showing that the amounts deposited in the account were controlled in any way by ULC-Modesto. We merely have the self-serving, uncorroborated testimony of petitioner Richard S. McMains. [4] Therefore, petitioners have failed to prove they made contributions to a qualified tax-exempt organization. *350 Furthermore, petitioners have failed to show that no part of the income of ULC No. 24564 inured to their personal benefit. Sec. 170(c)(2)(C); Davis v. Commissioner,81 T.C. 806, 818 (1983), affd. without published opinion 767 F.2d 931 (9th Cir. 1985); McGahen v. Commissioner,76 T.C. 468, 482-483 (1981), affd. without published opinion 720 F.2d 664 (3d Cir. 1983). We are convinced that, in fact, the contrary is true. Petitioners continued to reside on the same property before and after the execution of the quit claim deed. Petitioners' produced no evidence to support their assertion that ULC-Modesto required them to remain to manage "church" property. More convincingly, petitioners were the sole signatories over the ULC No. 24564 bank account out of which personal expenses were regularly paid. Based upon the foregoing, we find for respondent on this issue. Issue 2. Unreported Income
The Commissioner determined that petitioners failed to report income based upon deposits made into their personal bank account and the ULC No. 24564 bank account. Petitioners' sole evidence concerning this aspect of the Commissioner's *351 determination was petitioner Richard S. McMains' assertion that one deposit of $2,000 into their personal account was not income, but rather a gift from a friend, whom he refused to identify. Petitioners failed to introduce any other evidence to refute the determination of unreported income. It is clear that petitioners received income but attempted to avoid the taxation of the income by depositing it in the bank account of their chapter of the Universal Life Church. Accordingly, we find for respondent on this issue. Issue 3. Statute of Limitations
Petitioners' claim that the applicable period for assessment for the taxable year 1980 expired prior to the mailing of the statutory notice on May 9, 1984. Section 6501(a) provides that the Commissioner must assess a deficiency within 3 years after the return to which the assessment relates has been filed. Under section 6501(b)(1) a tax return is deemed filed on the later of the date it is actually filed or the last day for timely filing. Therefore, petitioners' return is deemed filed on April 15, 1981. Accordingly, the Commissioner only had until April 15, 1984, to assess a deficiency with respect to this return or issue a *352 statutory notice of deficiency, which would suspend the running of the period of limitations. Sec. 6503(a)(1). However, section 7609(e) provides that if any action is brought to enforce a third-party summons, the applicable period of limitations will be suspended for the period, including appeals, that such enforcement action is pending. See sec. 301.7609-5, Proced. & Admin. Regs. Respondent filed a petition in U.S. District Court to enforce a third-party summons issued to the bank where the ULC No. 24564 bank account was maintained on January 9, 1984. On February 8, 1984, the District Court judge issued an order enforcing the summons. As a result the running of the period of limitations was suspended for 30 days, which gave the Commissioner until at least May 15, 1984, to mail the statutory notice of deficiency. The mailing of the notice of deficiency, on May 9, 1984, was, therefore, timely. Issue 4. Additions to Tax Under Section 6653(a)(1) and 6653(a)(2)
The Commissioner determined that the additions to tax under sections 6653(a)(1) and 6653(a)(2) [5] were appropriate because petitioners underpaid their Federal income tax liabilities due to negligence or intentional *353 disregard of rules or regulations. The Commissioner's determination is presumptively correct and will be upheld unless petitioners rebut the presumption. McGahen v. Commissioner,76 T.C. at 484. Petitioners have failed to carry this burden and we find for respondent upon this issue. Issue 5.Damages Under Section 6673
The final issue for decision is whether damages should be awarded to the United States pursuant to section 6673. Section 6673 provides for damages to be awarded to the United States in an amount not in excess of $5,000 whenever it appears that a taxpayer has instituted or maintained proceedings before this Court primarily for delay or where the taxpayer's position is frivolous or groundless. As we have stated, this Court has been faced with numerous *354 cases, such as this one, concerning attempts by taxpayers to use the "pretext of a church to avoid paying their fair share of taxes, * * * [and to] resort to the courts in a shameless attempt to vindicate themselves." Miedaner v. Commissioner,81 T.C. 272, 282 (1983). Prior to the trial of this case, respondent provided petitioners with copies of opinions of this Court in which deductions for contributions to similar self-described churches were disallowed. Petitioners must have known that their contentions regarding deductions for payments to their chapter of the Universal Life Church were baseless, yet they continued to press them. Petitioners herein have abused the processes of this Court and wasted its resources. In response to respondent's request for damages, petitioners simply contend that section 6673 is unconstitutional because it penalizes them for exercising their right to seek redress of their grievances. This argument has no merit. Larsen v. Commissioner,765 F.2d 939, 941 (9th Cir. 1985), affg. per curiam an unreported order of this Court. On this record we conclude that the proceedings were instituted and maintained primarily *355 for delay and that petitioners' claims for deductions for contributions to a qualified tax-exempt organization are frivolous or groundless and accordingly award damages to the United States under section 6673 in the amount of $1,500. To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in question, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Booker v. Commissioner,T.C. Memo. 1985-93; Lane v.Commissioner,T.C. Memo. 1985-89; Rager v. Commissioner,T.C. Memo. 1984-563; Lee v. Commissioner,T.C. Memo. 1984-562; Rubertov. Commissioner,T.C. Memo. 1984-557; Moriarty v. Commissioner,T.C. Memo. 1984-539; Swanson v. Commissioner,T.C. Memo. 1984-524; Snodgrass v. Commissioner,T.C. Memo. 1984-435; Clark v. Commissioner,T.C. Memo. 1984-326↩.
3. Petitioners do not appear to be directly claiming that the specific exemption enjoyed during the taxable years in issue by ULC-Modesto (see Universal Life Church, Inc. v. United States,372 F. Supp. 770 (E.D. Cal. 1974)) constitutes a group exemption for ULC-Modesto and all of its chapters. Cf. Davis v. Commissioner,81 T.C. 806, 815 (1983), affd. without published opinion 767 F.2d 931↩ (9th Cir. 1985). 4. Petitioners attempted to introduce into evidence receipts and annual statements prepared by ULC-Modesto personnel purporting to show the amounts petitioners donated to ULC-Modesto during the taxable years in issue. On respondent's objection, we excluded these documents as inadmissible hearsay as the ULC-Modesto personnel who prepared them were not called to testify and the documents did not fall within any exception to the hearsay rule. Fed. R. Evid. 802, 803, 804; see Davis v. Commissioner,81 T.C. at 814↩.
5. Sec. 6653(a)(2), which imposes an addition to tax equal to 50 percent of the interest due on an underpayment of tax whenever the addition to tax under sec. 6653(a)(1) is also appropriate, was added to the Code by sec. 722(b)(1) of the Economic Recovery Tax Act of 1981, Pub. L. 97-34, 95 Stat. 172, 342, effective for taxes the last date for the payment of which is after December 31, 1981.↩